FILED
2011 Nov-14  AM 11:05
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT ALAN WITCHER, *et al.*, | ) | |
| | ) | |
| | ) | |
| **Appellants,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-10-S-3081-E |
| | ) | |
| VALREY W. EARLY III, UNITED STATES BANKRUPTCY ADMINISTRATOR, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Appellee.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on appeal from the order of dismissal of the United States Bankruptcy Court for the Northern District of Alabama. *In re Witcher,* No.10-40227, slip op at 4 (Bankr. N.D. Ala. Aug. 3, 2010). Appellants, Robert and Jennifer Witcher, raise only one issue on appeal: whether a bankruptcy court may consider a debtor's ability to pay his debts, as measured by his ongoing payments to secured creditors, in evaluating whether "the totality of the circumstances" of his "financial situation demonstrates abuse" of the provisions of chapter 7 of the bankruptcy code. 11 U.S.C. § 707(b)(3)(B). Upon consideration of the parties' briefs and the record of the bankruptcy court, this court affirms the ruling of the bankruptcy court.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Appellants filed a petition for bankruptcy relief under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*. on January 28, 2010.[1]  A little over three months thereafter, *i.e.*, on May 3, 2010, the bankruptcy administrator (appellee herein), filed a motion to have the case dismissed or converted to a chapter 13 case, on the ground that appellants' petition was an abuse of the provisions of chapter 7.[2]

In ruling on the administrator's motion, the bankruptcy court considered appellants' average monthly payments on secured debts, which they were required to document as part of their bankruptcy petition.[3]  Among other things, those payments were for a camper, a boat, a trailer, and a tractor.[4]  The court determined that appellants' "ability to pay, as well as their reluctance to change their lifestyle in order to provide a distribution to creditors, together indicate that granting relief in this chapter 7 case would be an abuse." *Witcher,* slip op at 4.  Specifically, appellants had "proposed to keep unnecessary, luxury items that, if surrendered, would leave enough income to provide a meaningful distribution to creditors." *Id.* at 5.  They wanted "to retain and pay for items not reasonably necessary for their support, which they [could]

---

[1] *See* doc. no. 4 (Initial Brief of Appellants), at 6.

[2] *Id.*

[3] *Id.* at 7.

[4] *Id.*

better afford once their unsecured debt [was] out of their way." *Id.* (bracketed alterations supplied). Therefore, the bankruptcy court found under 11 U.S.C. § 707(b) that appellants' bankruptcy petition was an abuse of chapter 7. Accordingly the court granted the administrator's motion, and ordered appellants to convert the petition to a chapter 13 proceeding within fourteen days.[5] Appellants failed to convert their case, and it was dismissed.[6] Appellants appeal that ruling, arguing that the bankruptcy court improperly considered their ability to pay secured creditors in concluding that their petition was an abuse of chapter 7.

## II. LEGAL STANDARD

### A.   Standard of Review

A district court assumes the role of an appellate court when reviewing the decision of a bankruptcy court. *See* 28 U.S.C. § 158(a). A bankruptcy court's finding

---

[5] *Id.* at 6.

[6] *Id.* Following the bankruptcy court's ruling on appellee's motion, appellants "suffered a meaningful loss of income when Mr. Witcher became unemployed." *Id.* at 8. They then sold or surrendered the assets securing some of their debts. *Id.* After those events, appellants moved the bankruptcy court to amend or alter its previous order based on the change in their financial circumstances. *Id.* at 6. On August 31, 2010, the bankruptcy court denied that motion, again giving appellants 14 days in which to convert their case. It was following this second ruling that the appeal was made.

Although appellants' motion to amend was based on a change in factual circumstances potentially relevant to the bankruptcy court's ruling, appellants have made no argument suggesting that the bankruptcy court's factual decision was in any way deficient. Rather, in both their initial brief and their reply brief, they focus solely on the interpretation of § 707(b). Under the applicable standard of review, this court does not see fit to disturb the bankruptcy court's factual findings when appellants do not even challenge them.

of fact must be upheld on appeal unless deemed clearly erroneous. *See* Fed. R. Bankr. P. 8013; *In re Downtown Properties, Ltd.* 794 F.2d. 647, 651 (11th Cir. 1986).  A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum,* 333 U.S. 364, 395, (1948).  Determinations of law, on the other hand,  are reviewed under a *de novo* standard of review.  *See In re Kalter*, 292 F.3d 1350, 1352 (11th Cir. 2002).

**B.    11 U.S.C. § 707(b)**

This case turns upon the interpretation to be provided 11 U.S.C. § 707(b).  That section gives the bankruptcy court the power to dismiss the case of a debtor whose debts are primarily consumer debts "if it finds that the granting of relief would be an abuse of the provisions of" chapter 7.  11 U.S.C. § 707(b)(1).  Alternatively, the bankruptcy court may, with the consent of the debtor, convert the case to a chapter 13 proceeding for the same reason.  *Id.*  Subsections (b)(2) and (b)(3), discussed in the next two subparts of this opinion, specify how the court is to determine whether abuse exists.

**1.    The "means test"**

Subsection 707(b)(2)(A) contains a complex formula, colloquially called the "means test," for determining a debtor's ability to pay his or her debts.  The means

test takes four factors (each defined by specific statutory language) into account to determine the debtor's capability of paying his debts.  Those factors are:  (*i*) monthly income; (*ii*) monthly expenses; (*iii*) monthly payments on secured debts; and (*iv*) expenses for the payment of priority claims.  *Id.* § 707(b)(2)(A)(*i*)-(*iv*).  Factors (*ii*) through (*iv*) (monthly expenses and debt payments) are subtracted from factor (*i*) (monthly income).  *Id.* § 707(b)(2)(A)(*i*).  If the difference is greater than a threshold amount, as defined in the statute, "the court shall presume abuse exists . . . ."  *Id.* Subsection 707(b)(2)(B) outlines the manner in which a debtor may rebut the presumption of abuse.[7]

### 2.    The "totality of the circumstances" test

A debtor who "passes" the means test, either because the presumption of abuse never arose, or because he rebutted that presumption, is still subject to scrutiny under subsection 707(b)(3).  That subsection provides:

> [I]n a case in which the presumption [of abuse] does not arise or is rebutted, the court shall consider —
>
>> (A) whether the debtor filed the petition in bad faith; or
>>
>> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need

---

[7] This court will refrain from a more detailed explication of the means test, because it is undisputed that appellants "passed" the test, *i.e.,* the presumption of abuse never arose.  Doc. no. 4, at 7; *see* doc. no. 6 (Brief for the Appellee), at 5.

for such rejection as sought by the debtor) of the debtor's financial situation demonstrate abuse.

*Id.* § 707(b)(3) (bracketed alterations supplied).  The parties agree that appellants did not file their Chapter 7 petition in bad faith,[8] but they dispute the second prong of subsection (b)(3):  *i.e.*, whether the totality of the circumstances of appellants' financial situation demonstrates abuse.

## III.  DISCUSSION AND ANALYSIS

The dispute in this case centers around the bankruptcy court's interpretation of "the totality of the circumstances . . . of the debtor's financial situation . . . ."  *Id.*  The bankruptcy court, in analyzing the totality of the circumstances, considered appellants' ability to pay, as measured by their secured debt payments.  *Witcher*, slip op. at 4-5.  Those payments are included in part (*iii*) of the means test formula.  11 U.S.C. § 707(b)(2)(A)(*iii*).  Appellants argue that, by the explicit inclusion of monthly payments on secured debts in the means test, such payments are implicitly excluded from consideration in the totality of the circumstances test;[9] in other words, that consideration of a debtor's ability to pay secured debts in the totality of the circumstances analysis encroaches on the exclusive domain of the means test.  On the other hand, the appellee bankruptcy administrator argues that the existence of the

---

[8] Doc. no. 4, at 8; *see* doc. no. 6, at 5.

[9] *See* doc. no. 4, at 13.

means test does not prohibit a court from considering its constituent parts in a totality of the circumstances analysis.[10]

## A.    Interpretation of § 707(b)

Virtually every bankruptcy and district court that has considered this same issue has concluded that a debtor's ability to pay secured creditors is a significant part of the totality of the circumstances test.   This court agrees with the majority approach, based on the considerations discussed below.

### 1.    Ability to pay as a relevant factor under § 707(b)(3)

When interpreting a statute, a court must begin with its plain language.   *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 172 (2001) ("When the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.") (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989)).   The plain language of § 707(b)(3) calls for a court to consider whether "the totality of the circumstances . . . of the debtor's *financial situation* demonstrates abuse."   11 U.S.C. § 707(b)(3)(B) (emphasis supplied).   "The plain meaning of the phrase 'debtor's financial situation' must include a debtor's actual income and expenses, since such information is the starting point for any analysis of an individual's financial situation."   *In re*

---

[10] *See generally* doc. no. 6.

*Mestemaker,* 359 B.R. 849, 854 (Bankr. N.D. Ohio 2007); *see also, e.g., In re Reed,* 422 B.R. 214, 233 (C.D. Cal. 2009) (holding that the plain language of § 707(b)(3)(B) "necessarily requires an examination of a debtors' ability to pay"); *In re Perelman,* 419 B.R. 168, 176 (Bankr. E.D.N.Y. 2009) ("[T]he plain language of § 707(b)(3) . . . is clear, and compels a conclusion that a court is mandated to consider a debtor's actual debt-paying ability where a presumption of abuse does not arise under the Means–Test."); *In re Barnett*, No. 06-62414, 2007 WL 4510227, at *4 (Bankr. N.D. Ohio Dec. 18, 2007) ("Foreclosing examination of a debtor's ability to pay would virtually render (b)(3)(B) meaningless."); *In re Lenton,* 358 B.R. 651, 663 (Bankr. E.D. Pa. 2006) ("The broad language 'totality of circumstances' and 'financial situation' clearly encompasses a debtor's ability to pay.") (citing *In re Pak*, 343 B.R. 239, 243 (Bankr. C.D. Cal. 2006)).

The statute is also clear as to when the "totality of the circumstances" test is to be applied.  "[W]hen the presumption [of abuse] . . . does not arise or is rebutted," *i.e.*, the debtor passes the means test, "the court *shall consider*" the totality of the circumstances.  11 U.S.C. § 707(b)(3) (emphasis and bracketed alteration supplied). Therefore, the statute commands that a debtor whose bankruptcy petition passes the means test still be subjected to the totality of the circumstances test.  *See, e.g., Barnett*, 2007 WL 4510277 at *3 ("As a result, each section is distinct.  Dismissal

under (b)(2) is appropriate when the presumption of abuse arises, as determined by the means test, and is not rebutted; other cases fall under (b)(3).").

>    **2.    Weighing ability to pay in a totality of the circumstances analysis**

Most courts agree that a debtor's ability to pay secured creditors is a "primary factor" in the totality of the circumstances analysis, but that it cannot constitute proof of abuse on its own. *See, e.g., Perelman*, 419 B.R. at 176 ("[A] debtor's ability to pay still plays a critical role when applying the totality of circumstances test under § 707(b)(3).") (collecting cases); *In re Cribbs*, 387 B.R. 324, 334 (Bankr. S.D. Ga. 2008) ("[I]n order for the United States Trustee to satisfy its burden under the 707(b)(3)(B) 'totality of circumstances' test, the Trustee must show more than just Debtors' ability to pay."); *In re James*, 414 B.R. 901, 914 (Bankr. S.D. Ga. 2008) ("Therefore, even though the primary factor is whether a debtor has the ability to repay a meaningful portion of his debts from future income, the United States Trustee must prove more . . . ."); *In re Nockerts*, 357 B.R. 497, 507 (Bankr. E.D. Wis. 2006) (holding that ability pay is not alone sufficient to constitute abuse under the totality of the circumstances test, but noting that it "may even be the primary factor to be considered"). *But see In re Henebury*, 361 B.R. 595, 606 (Bankr. S.D. Fla. 2007) ("[T]he Court respectfully disagrees" with those that hold "that something more than ability to pay is required for dismissal under § 707(b)(3)(B) . . . .").

Contrasted with the numerous decisions supporting the consideration of a debtor's ability to pay secured creditors under the totality of the circumstances test, there is a paucity of authority supporting the opposite view. Appellants cite but one case, *In re Walker*, 381 B.R. 620 (Bankr. M.D. Pa. 2008), that adopted their interpretation of § 707(b). In ruling that ability to pay could not be considered as part of the totality of the circumstances analysis, the *Walker* court relied on the canon of negative implication. *Id.* at 624. That canon of statutory construction provides that when a statute contains a "commonly associated group or series," items not listed in the statute were deliberately excluded, rather than inadvertently omitted. *Id*. (citing *Perlin v. Hitachi Capital America Corp. (In re Perlin)*, 497 F.3d 364, 370 (3d Cir. 2007)). The *Walker* court concluded that subsections (b)(2) and (b)(3) were part of the same "complex statutory scheme." *Id.* "Thus," ruled the court, "inclusion of the income and expenses calculation in § 707(b)(2) precludes reconsideration of income and expenses in § 707(b)(3) pursuant to the canon of negative implication." *Id.*

Another court, in discussing *Walker*, concluded that this canon was improperly used, saying that "the canon of negative implication should not be invoked when its application would conflict with the text of the statute." *In re Lanza*, 450 B.R. 81, 86 (Bankr. M.D. Pa. 2011) (citing *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 122 (2002)). The *Lanza* court concluded that the broad categories defining court

discretion in § 707(b)(3), *i.e.*, "totality of the circumstances" and "financial situation," rendered application of the canon of negative implication inappropriate. *Lanza*, 450 B.R. at 86.  This court "finds the *Walker* analysis unpersuasive and contrary to a majority of bankruptcy court decisions."  *In re Talley*, 389 B.R. 741, 745 (Bankr. W.D. Wash. 2008).

This court agrees with those courts that have held that a debtor's ability to pay secured creditors is a primary factor to take into account under the totality of the circumstances test, but that factor alone cannot alone be deemed to constitute abuse. The means test is a rigid formula based on ability to pay.  Congress would not have written the means test into the statute, only to give the courts the power to sidestep it completely by finding abuse under the totality of the circumstances test based solely on ability to pay.  Even so ability to pay still can, and should, be factored into the totality of the circumstances analysis.  Indeed, "[t]here are innumerable fact patterns where the means test could show an inability to pay but the filing could still constitute an abuse of chapter 7."  *Barnett*, 2007 WL 4510277 at *4 (collecting cases considering ability to pay in totality of the circumstance analysis) (footnote omitted).

The Bankruptcy Court for the Southern District of Georgia listed several factors appropriate for a court to consider, in addition to a debtor's ability to pay secured creditors, in its 2008 decision in the case of *In re Cribbs*, 387 B.R. 324,

(Bankr. S.D. Ga. 2008):  *i.e.*,

>    (1) Whether the bankruptcy filing was precipitated by an unforeseen calamity, such as a sudden illness or unemployment;
>
>    (2) Whether the debtor is eligible for chapter 13 relief;
>
>    (3) Whether the debtor has made any efforts to repay his debts or negotiate with creditors; whether there are non-bankruptcy remedies available to the debtor; or whether the debtor can obtain relief through private negotiations[;]
>
>    (4) [W]hether the debtors could provide a "meaningful" distribution in a chapter 13 case;
>
>    (5) [W]hether the debtor's expenses could be reduced significantly without depriving them and their dependents of necessities, including whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition[;]
>
>    (6) [T]he period of time over which the debts were incurred . . . .

*Cribbs,* 387 B.R. at 335 (citations and footnote omitted, bracketed alterations supplied).  That list is not necessarily all inclusive, but it is illustrative as to the type of factors a court should consider.

**B.     The Bankruptcy Court's Totality of the Circumstances Analysis**

Here, the bankruptcy court considered appellants' ability to pay in conjunction with "their reluctance to change their lifestyle in order to provide a distribution to creditors . . . ."  *Witcher*, slip op. at 4.  The bankruptcy court ruled that appellants' refusal to "give up certain habits or luxuries in exchange for relief," *id.* at 5, fits

within one of *Cribbs* factors:  *i.e.,*

> whether the debtor's expenses could be reduced significantly without depriving them and their dependents of necessities, including whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition . . . .

*Cribbs*, 387 B.R. at 335.  Appellants' secured debts, for luxury items, reflect not only an ability to pay, but an unwillingness to participate in the full "give and take process," *Witcher*, slip op. at 5, of bankruptcy.  The bankruptcy court was correct in considering those factors in its totality of the circumstances analysis, and in concluding that appellants' petition constituted an abuse of chapter 7 due to their financial situation.  Therefore, the decision of the bankruptcy court is due to be affirmed.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED.  The Clerk is directed to close this file.

DONE this 14th day of November, 2011.

_____
United States District Judge